GENEVA PATROLMEN'S ASSOCIATION, APPELLANT, v. CITY OF GENEVA, APPELLEE.

(No. 1147—Decided May 23, 1984.)

*Mr. William P. Bobulsky* and *Ms. Betty Grdina,* for appellant.

*Mr. Gary Pasqualone* and *Mr. John C. Lombard,* for appellee.

O'NEILL, J. Dennis Brown is and was a patrolman in the Police Department of the city of Geneva, Ohio.

On October 13, 1981, Brown was suspended from his employment for a period of forty-five days for alleged infraction of departmental rules.

Pursuant to the provisions of a collective bargaining agreement between the Geneva Patrolmen's Association and the city of Geneva, Ohio, Brown initiated a grievance procedure pursuant to Article XXV of the agreement, which reads as follows:

"There shall be an earnest, honest, and prompt effort to settle differences. If any controversy or difference arises between an employee and the Employer with respect to the interpretation or application of this Agreement, except for matters appealed to the Civil Service Commission, such controversy shall be handled as follows:

"Step 1. The employee shall present the complaint in writing to the Police Chief, stating the exact nature of the grievance and the section of this Agreement alleged to be violated. The Chief or his designated representative shall meet with the employee who may be accompanied by a representative of his choosing in an effort to resolve the matter. Witnesses may be called by either party.

"The grievance must be filed by the employee within ten working days of the occurrence of the cause for grievance or within ten working days of the time the employee could reasonably have become aware of the cause for grievance.

"The Chief or his designated representative must meet with the grievant and respond in writing to the grievance within ten working days of receipt of the grievance.

"If the grievant does not refer the grievance to Step 2 of the grievance procedure within five working days of receipt of the Chief's response, the grievance shall be considered to have been satisfactorily resolved.

"Step 2. The employee shall refer the grievance and all relevant material concerning the grievance to the City Manager who shall convene a meeting between the grievant, his representative, the Chief, and such witnesses as he deems appropriate within seven working days of receipt of the grievance. The City Manager shall respond to the grievance within seven working days of his hearing.

"If the grievant does not refer the grievance to the third step of the grievance procedure within seven working days of receipt of the City Manager's answer, the grievance shall be considered to be satisfactorily resolved.

"Step 3. The grievant shall notify the City Manager of intent to seek arbitration under the procedure outlined above. Within fifteen working days of such notification, the parties shall each appoint a member to a board of arbitration, which two appointees shall select a third arbitrator. Should the members already selected fail to agree on a third appointee, the third appointee shall be selected from a panel provided by the AAA. The decision of the board shall be in writing and shall be final and conclusive but shall have no power to add to, subtract from or modify any of the terms of this Agreement nor exercise any of the responsibilities of the Employer or the Union.

"Each party shall pay its own expenses and any fees and/or expenses of its advocate arbitrator. Expenses of the neutral arbitrator and other common expenses shall be borne equally by the parties."

Brown waived Step 1 and Step 2 of the grievance procedure and requested arbitration. The arbitration panel, after a hearing, affirmed the decision.

On September 3, 1982, the Geneva Patrolmen's Association filed an "Application for Vacation of Arbitration

Award" in the trial court. The trial court, on April 7, 1983, affirmed the decision of the arbitration panel. On May 6, 1983, the Geneva Patrolmen's Association filed a notice of appeal.

A point, as to parties, although not raised before the panel or before the lower court, must not be passed.

Article XXV of the collective bargaining agreement provides that the grievant shall initiate arbitration. Brown signed such demand as the "aggrieved employee." Thus, the parties before the arbitration panel were Dennis Brown and the city of Geneva, Ohio.

The appeal to the trial court was brought by the Geneva Patrolmen's Association as a plaintiff. R.C. 2711.10 states that a court may vacate an arbitration award "upon the application of any party to the arbitration." Since the association was not a party to the arbitration, it was not a real party in interest as to a vacation proceeding. Since the statute delineates the jurisdiction of the trial court, a question exists as to the applicability of waiver. Furthermore, only an "aggrieved party" may appeal a decision from a trial court. The nominal appellant to this court was not an aggrieved party. In view of our disposition of this case, upon the merits, we shall, with trepidation, pass this question.

The first assignment of error complains that the trial court erred in concluding that the city manager had authority to suspend Brown.

The appellant relies upon Section 8-16, Article III of the Geneva City Code which was enacted on March 25, 1958 and reads, in pertinent part, as follows:

"A. The *Chief of Police* and the Chief of the Fire Department *shall have exclusive right to suspend any of the deputies, officers or employees in their respective departments and under their management and control* * * * for any * * * reasonable and just cause." (Emphasis added.)

The trial court concluded that this ordinance was in conflict with Section C-23, Article II of the Geneva City Charter, enacted December 2, 1975, and reading, in part, as follows:

"The City Manager, subject to the provisions of The Charter * * * shall have power and be required to:

"(1) *Appoint and when necessary for just cause, remove* any of the appointive officers and employees of the municipality." (Emphasis added.)

The appellant argues that the ordinance was enacted with intent to modify the power granted to the city manager by the charter. A charter may not be modified or amended by any legislative act. Such modification or amendment can be accomplished only by its submission to the electors. (Section 9, Article XVIII, Ohio Constitution.) The charter prevails.

Appellant goes on to argue that the trial court erred in finding that the arbitration panel did not modify the collective bargaining agreement sustaining the suspension of Brown's fringe benefits.

The suspension executed by the city manager specified in part:

"During this suspension you will receive none of the benefits of employment such as sick leave, insurance benefits, seniority accrual, etc."

The arbitration panel concluded that Brown had suffered no loss:

"In the absence of evidence to indicate that the grievant incurred any loss for lack of coverage under the hospitalization group plan, dental insurance plan, or liability insurance plan under Articles XI and XIII of the contract, it would appear that the violation, if any, by the Employer was without damage and consequently, no relief is in order. The majority of the Board believes it not unreasonable to stop the accrual of sick leave under the provisions of Article XVIII during the 45 days of suspension.

"Arbitrators frequently have ordered discharged employees reinstated

without seniority credit for the period between discharge and reinstatement. Arbitrator Stouffer in *West Penn Power Co.* [1970], 54 L.A. [Lab Arb. (BNA)] 228; Arbitrator Kates in *Weirton Steel Co.* [1968], 50 L.A. 103; Arbitrator Sembower in *American Airlines, Inc.* [1966], 48 L.A. 152; Arbitrator Seitz in *Blue Ridge Textile Co., Inc.* [1965], 46 L.A. 763; Arbitrator Wolff in *Chrysler Corp.* [1955], 24 L.A. 549; Arbitrator Hepburn in *E.I. du Pont de Nemours & Co., Inc.* [1947], 9 L.A. 345. Also see, Elkouri, How Arbitration Works (3d Ed., 1973) p. 648. Under the circumstances of this case, a majority of the Board believes and finds that the Employer was justified in stopping the accrual of seniority during the 45 day disciplinary suspension of the grievant."

Appellant argues that it was a fixed practice of the city in cases of suspension not to suspend fringe benefits. Regardless, the bargaining agreement specifically provides that sick leave shall be accrued "at the rate of 1½ days for each completed month of service." (Article XVIII.) A suspended employee is not in "service." Suspension is a deprivation of office and its emoluments.

" 'Suspension' has been defined as the temporary deprivation of office, power, prerogative, or other privilege; the act of restraining one, for a time, from the exercise of his duties, rights, or powers; temporary deprivation of an office or its emoluments; especially temporary delay, interruption, or cessation, as of office, powers, prerogatives, and the like; and the temporary stopping or interdiction of the exercise of some power, proceeding, right, or law." 15 Ohio Jurisprudence 3d (1979) 126, Civil Servants, Section 141.

As a matter of law which supersedes "fixed practice," a suspended employee is not entitled to and should not be furnished fringe benefits.

The third assignment of error argues that the arbitration panel erred in admitting hearsay testimony by Police Chief Hocevar. If hearsay or improper evidence was erroneously admitted, we do not find prejudice. The panel received direct evidence, which reads as follows:

"At the time of the incident there were only four persons in the station. They were the dispatcher, the prisoner and the two police officers. The dispatcher was the only eye witness not directly involved. His testimony is unequivocal. He testified that when the grievant started to 'pat' C.L.B. down, the prisoner started yelling, screaming and threatening Patrolman D.J.B.'s life and his family; then were [*sic*] a spitting sound, at which time the grievant stepped back, raised his right hand and struck the prisoner twice on the left side of the face. Thereupon, the prisoner fell forward, his hands still handcuffed behind his back. As he fell forward, the grievant stepped back, raised his right leg and kicked the prisoner in the chest. According to the dispatcher, the grievant thereupon removed his service revolver and they all fell to the floor. He then heard the grievant say, 'I will shoot your eye out.' On cross-examination, the dispatcher testified that the prisoner did not appear to be out of control nor getting out of control. He further testified that his only fear was from the action of Patrolman D.J.B. in pulling his revolver."

There is no challenge raised to this "unequivocal" evidence.

This assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Cook, P.J., and Dahling, J., concur.

O'Neill, J., of the Seventh Appellate District, sitting by assignment in the Eleventh Appellate District.